IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION** |
| v. | NO. 23-215-03 |
| **CHIHEAN JONES** | |

**HODGE, J.**                                                                                                             September 19, 2025

**MEMORANDUM**

    Before the Court is Defendant Chihean Jones' ("Defendant") Motion for an Evidentiary Hearing (ECF No. 143), converted to a Motion to Suppress ("Motion") by the Court's July 28, 2025 Order (ECF No. 361). Defendant is charged in a six-count Second Superseding Indictment ("Indictment") with various offenses arising out of four (4) different robberies occurring on August 22, 2022 and January 16, 17, 18, 2023. (ECF No. 94.) The Government alleges that Defendant participated in two of the four robberies — one on August 22, 2022 (Count I) and one on January 17, 2023 (Count III), both in violation of 18 U.S.C. § 1951(a). (*Id.* at 1, 4.)[1]

    Defendant moves to suppress his post-arrest statement made on January 25, 2023 as involuntary under the Fourteenth Amendment based on (1) the circumstances of his post-arrest detention, including the length of detention, his isolated confinement, and deprivation of food and drink; and (2) the Detectives' provocation of him during the interrogation, whereby they allegedly taunted, berated, and belittled him and wrongly suggested he could be exposed to the death penalty.

---

[1] Count IV charges Defendant with 18 U.S.C. § 924 (c)(1)(A)(iii) use of a firearm in furtherance of a crime of violence and Count V charges Defendant with 18 U.S.C. § 924 (j)(1) murder in the course of using and carrying a firearm, both in relation to the robbery that occurred on January 17, 2023. (ECF No. 94 at 5–6.)

(ECF No. 143 at 2, 7; ECF No. 212 at 116:20–17:15.) Based on these reported circumstances, Defendant submits that his statement was a product of coercive police conduct and therefore should be suppressed. (ECF No. 143 at 7.) While defense counsel does not clearly challenge the voluntariness of Defendant's *Miranda* waiver in her brief (ECF No. 143), counsel confirmed during the July 9, 2024 hearing that she was contesting this as well. (ECF No. 212 at 162:11–15.) Thus, the Court makes its determination on the issues of the voluntariness of the Defendant's *Miranda* waiver and his post-arrest statement as a whole.

I.     **FACTUAL BACKGROUND**[2]

On January 24, 2023, Philadelphia Police Homicide Detectives issued a "Patrol Alert" for Jones and his Chevrolet Suburban after he was identified as the gunman in a January 17, 2023 robbery and murder that took place at an Exxon gas station on Torresdale Avenue in Philadelphia. (ECF No. 150 at 5; ECF No. 212 at 124:10–25, 129:25–30:2.) At approximately 6:15 P.M. on January 24, 2023, Defendant was arrested by Philadelphia police officers while in his car on the 5200 block of Hawthorne Street in Philadelphia. (ECF No. 143 at 2–3; ECF No. 212 at 125:1–26:1, 127:4–7.) Officers transported Defendant to the Philadelphia homicide division, and at 7:31 P.M. Defendant was placed in an interrogation room and was not told why he was arrested. (ECF No. 143 at 3; ECF No. 212 at 126:2–5, 130:13–15; Ex. 1 at 19:31.[3]) At 10:29 P.M., Defendant requested to use the bathroom, which he was permitted to do, and returned to the room at 10:32 P.M. (ECF No. 143 at 3; Ex. 1 at 22:29–32.) Based on video footage of the interrogation room,

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.
[3] Exhibits 1–2 to the Government's Response to Defendant's Motion to Suppress were admitted during the July 9, 2025 hearing. (ECF No. 212 at 63:3–64:2.) Exhibit 1 is a video of Defendant's January 25, 2023 statement to homicide investigators. The Court refers to the timestamps as shown in that video. Exhibit 2 is a written summary of Defendant's statement to homicide investigators on January 25, 2023.

from approximately 12:46 A.M. until 7:36 A.M., Defendant laid down on the interrogation room floor and appeared to be sleeping. (ECF No. 212 at 156:21-25; Ex. 1 at 12:46–7:36.) Approximately twelve hours after his arrest, at 6:21 A.M., Defendant was given a drink and two sandwiches. (ECF No. 143 at 3; Ex. 1 at 6:21.) He used the bathroom again at 7:41 A.M. (ECF No. 143 at 3; Ex. 1 at 7:41.)

Detectives John Bartol and Matt Farley entered the interrogation room at 8:51 A.M., approximately fourteen hours after Defendant's arrest. (ECF No. 143 at 3; ECF No. 212 at 131:12–15; Ex. 1 at 8:51.) Detective Bartol asked Jones if he needed anything, to which Defendant responded "no." (ECF No. 150 at 6; Ex. 1 at 8:52.) At this time, Detective Bartol told Defendant that he was arrested in connection with a robbery and murder that occurred on January 17, 2023. (ECF No. 143 at 3; ECF No. 150 at 6; Ex. 1 at 8:52.) Detective Bartol then read Defendant his *Miranda* rights verbatim and asked, "do you understand all that?" (ECF No. 143 at 3; ECF No. 150 at 6; Ex. 1 at 8:52–53.) Jones acknowledged that he understood the rights by nodding his head in the affirmative and saying "yeah." (Ex. 1 at 8:53.) Detective Bartol testified that during the interrogation he did not observe anything that led him to believe that Defendant was under the influence of drugs or alcohol or suffering from mental illness. (ECF No. 212 at 132:21–33:3.) He also testified that Defendant appeared to be in good health. (ECF No. 212 at 133:4–10.)

The Detectives interrogated Jones for ninety minutes. (ECF No. 143 at 4; Ex. 1 at 8:53–10:21.) At 9:37 A.M., Detective Bartol told Jones that the jury would say "we are going to execute this guy, meaning you. But they don't do that anymore in Pennsylvania, so they're going to be like we are going to give this guy life." (ECF No. 143 at 4; Ex. 1 at 9:37.) Then at 9:50 A.M., Detective Bartol told Jones that "technically under the law in Pennsylvania I believe you can still get the death penalty." (ECF No. 143 at 4; Ex. 1 at 9:50.)

The Detectives accused Defendant of not caring for his girlfriend or unborn child and told Defendant what would happen to them. (ECF No. 143 at 4.) Specifically, Detective Farley said, "There is going to be some other mother fucker out there raising your kid and sleeping with your girl." (ECF No. 143 at 4; Ex. 1 at 9:48.) Detectives also told Jones he was a "cold blooded killer," a "fuck up," a "loser," "too fucking lazy to earn his own living," and "not a real man." (ECF No. 143 at 4; ECF No. 212 at 148:15–49:13; Ex. 1 at 9:38, 9:41, 9:49, 9:59, 10:20.) In the video footage of the interrogation, Detective Bartol moved his chair closer to Jones and raised his voice when Jones failed to provide responses, but neither Detective ever touched the Defendant nor threatened him with physical harm. (ECF No. 143 at 4; ECF No. 150 at 6; ECF No. 212 at 149:21–51:3, 157:5–9; Ex. 1 at 9:44, 9:51, 10:06, 10:10.)

The interrogation ended at 10:21 A.M., and Jones was allowed to use the bathroom for the third time. (ECF No. 143 at 5; ECF No. 150 at 6; ECF No. 212 at 151:23–52:2; Ex. 1 at 10:21.) The Detectives returned to the interrogation room at 10:56 A.M. and Detective Bartol read Defendant the summary of his statement (Ex. 2). (ECF No. 143 at 5; ECF No. 150 at 6; ECF No. 212 at 137:14–38:7; Ex. 1 at 10:56). Jones made one correction to the statement, stating that he last saw Keyonn Vincent, a co-defendant, "three weeks" rather than "two weeks" ago. (Ex. 1 at 10:59.) Detective Bartol made that change and then asked Jones, "Is there anything else you would like to add?" to which Jones replied, "No." (Ex. 1 at 11:00.) Detective Bartol then asked, "And everything I read back to you was correct?" Jones responded, "Yes." (Ex. 1 at 11:00.) Jones then signed the summary of his statement. (ECF No. 143 at 5; ECF No. 150 at 6; ECF No. 212 at 137:14–38:7.) Defendant had still not eaten the two sandwiches at this time. (ECF No. 212 at

138:12–19; Ex. 1 at 11:02.) Jones remained in the interrogation room until 3:42 P.M.[4] (Ex. 1 at 15:42.)

## II. PROCEDURAL HISTORY

Defendant filed the present motion on March 18, 2024 (ECF No. 143) and the Government filed its response on April 8, 2024 (ECF No. 150). On July 9, 2024, the Court held oral argument on various motions, including Defendant's Motion to Suppress. (ECF No. 212.) On July 12, 2024, at the request of defense counsel to permit supplemental briefing on the issues, the Court granted the request and ordered supplemental briefing on the Motion to be submitted on or before July 29, 2024. (ECF No. 206.) Following an additional request by the Defendant, the Court extended the deadline for supplemental briefing to September 16, 2024, and the parties were instructed to inform the Court on or before September 30, 2024 whether an additional hearing and argument on the Motion were necessary. (ECF No. 211.) After failing to receive any supplemental briefing or information regarding whether a hearing was necessary, the Court held a status conference on August 19, 2025 (ECF No. 367) to inquire of the Defendant, who is no longer represented by counsel but is representing himself *pro se*,[5] whether or not he wished to provide any supplemental briefing or argument, or rest on what was filed and argued by his previous counsel. At the status conference, Defendant stated that he did not wish to submit any supplemental briefing, declined an additional hearing on the Motion, and agreed to close the record with respect to the Motion.

---

[4] Although there was testimony during the July 9, 2024 hearing as to what occurred after Defendant signed the summary of his statement and before he was released from the interrogation room, those facts have no bearing on whether Defendant voluntarily waived his *Miranda* rights and whether his statement to law enforcement officers was voluntary under the Fourteenth Amendment.

[5] On February 13, 2025, the Court granted Ms. Caroline Cinquanto's Motion to Withdraw as Counsel and appointed new counsel, Mr. Riley Ross, to represent Defendant. (ECF No. 277.) Following an oral motion by Defendant during an April 9, 2025 status hearing, the Court granted Defendant's request to proceed *pro se* on April 11, 2025 and appointed Mr. Riley Ross as standby counsel for Defendant. (ECF No. 296.)

(ECF No. 367.) The Motion now appearing ripe for a determination, the Court considers Defendant's Motion (ECF No. 143), the Government's Response to the Motion (ECF No. 150), and the parties' oral arguments on the Motion at the July 9, 2024 hearing (ECF No. 212).

### III. LEGAL STANDARD

A defendant may move to suppress evidence pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure. In *Miranda v. Arizona*, the Supreme Court held that before a suspect is subjected to custodial police interrogation, he must be informed of certain rights, including the right to remain silent and the right to have counsel present during questioning. 384 U.S. 436, 444 (1966). A defendant may waive his *Miranda* rights so long as that waiver is made "voluntarily, knowingly and intelligently." *Id.* This determination is made based on the "totality of the circumstances." *Oregon v. Bradshaw*, 462 U.S. 1039, 1046 (1983). A waiver is voluntary if "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Colorado v. Spring*, 479 U.S. 564, 573 (1987). In assessing the voluntariness of a waiver, courts take into account the suspect's "background and experience, including prior dealings with the criminal justice system." *United States v. Jacobs*, 431 F.3d 99, 108 (3d Cir. 2005). A valid waiver may be written or oral. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

Even if a suspect has validly waived his *Miranda* rights, he may challenge a statement made to law enforcement officers as inadmissible under the Due Process Clause of the Fourteenth Amendment if it was made involuntarily. *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26 (1973). In assessing voluntariness, courts ask three questions: (1) if the statement was the "product of an essentially free and unconstrained choice by its maker," (2) if it was "the product of a rational intellect and a free will," and (3) whether or not the appellant's will was "overborne." *United States ex rel. Hayward v. Johnson*, 508 F.2d 322, 326 (3d Cir. 1975). Voluntariness of the statement is

evaluated based on a "totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation." *Id.*

For a statement to be deemed involuntary, it must have been obtained through coercive police conduct. *Colorado v. Connelly*, 479 U.S. 157, 165, 167 (1986). In addition to evidence of police coercion, courts look to the age of the accused, amount of education, level of intelligence, length of detention, repeated and prolonged nature of the questioning, and use of physical punishment, such as deprivation of food or sleep. *Schneckloth*, 412 U.S. at 226 (collecting cases); *Withrow v. Williams*, 507 U.S. 680, 693–94 (1993) (same).

The burden is on the Government to establish, by a preponderance of the evidence, that a *Miranda* waiver and post-arrest statement were voluntary. *Jacobs*, 431 F.3d at 108.

### IV. DISCUSSION

#### A. Defendant Voluntarily Waived his *Miranda* Rights

Defendant challenged the voluntariness of his *Miranda* waiver at the July 9, 2024 hearing, although he states in his Motion that he "verbally waived" his *Miranda* rights prior to his interrogation on January 25, 2023. (ECF No. 212 at 162:11–15; ECF No. 143 at 3; ECF No. 150 at 7.) Even though defense counsel did not put forward specific arguments at the hearing in support of this challenge, the burden lies on the Government to show voluntariness by a preponderance of the evidence. *United States v. Jacobs*, 431 F.3d 99, 108 (3d Cir. 2005).

As Defendant concedes, Defendant's *Miranda* rights were read to him verbatim prior to questioning and Defendant verbally waived those rights. (ECF No. 143 at 3; ECF No. 150 at 7; Ex. 1 at 8:53.) Defendant was also familiar with these warnings, as another Philadelphia police detective had come into contact with Defendant in relation to another criminal investigation about four months prior and read the *Miranda* warnings to him then before Defendant gave a statement.

7

(ECF No. 212 at 119:5–24.) As stipulated to during oral argument, Defendant also had previous experience with the criminal justice system, as he had been convicted four times. (ECF No. 212 at 117:18–25.) Detective Bartol testified that Defendant appeared to be in good physical condition, with no indication that he was under the influence of drugs or alcohol or suffering from a mental illness. (ECF No. 212 at 132:9–33:16.) Detective Bartol also testified that, based on his experience as a police officer and speaking with other individuals, he believed that Defendant actually understood the *Miranda* warnings. (*Id.* at 133:17–34:5.)

The Court has not seen or heard any facts contained in the record that show the Defendant's waiver of his *Miranda* rights was not made "voluntarily, knowingly and intelligently." Defendant is not a juvenile. He is not young and impressionable or unfamiliar with what happens when a person is arrested or is wanted for questioning as part of a criminal investigation. The Defendant at the time of interrogation was a 38-year-old person who had past knowledge of the criminal justice system through his prior charges and convictions and had been subjected to custodial interrogation before this interrogation. As stated above, he was questioned by officers and gave a statement after being given his *Miranda* warnings merely four months prior to the interrogation at issue in this Motion. Defendant did not appear to Detectives to be unaware of his circumstances or where he was, nor did he appear unable to comprehend his rights and what those rights were. Taking all of these facts in their totality and evaluating them accordingly, the Court finds that Defendant's waiver of his *Miranda* rights was voluntary.

### B. Defendant's Post-Arrest Statement Was Voluntary Under the Fourteenth Amendment

Defendant moves to suppress his post-arrest statement as involuntary based on the circumstances of his post-arrest detention and the police's provocation of him during the interrogation. (ECF No. 143 at 2, 7; ECF No. 212 at 116:20–17:15.) Defendant does not argue that

his age or intelligence contributed to the involuntariness of his statement. The Government argues that the totality of the circumstances shows that there was no police coercion involved in obtaining Defendant's statement. (ECF No. 150 at 9.)

At the outset, the Court notes that Defendant's statement is not a "confession"; on the contrary, the Defendant does not make an admission of wrongdoing, but rather, denies guilt. (Ex. 2.) While the Court questions how a statement denying guilt could possibly be the product of Defendant's will being "overborne," noting Defendant fails to explain which part(s) of the statement resulted from coercion, nonetheless, the Court will evaluate the voluntariness of Defendant's statement.

The Court first turns to the circumstances of Defendant's interrogation. Defense counsel argues that the following contribute to the involuntary nature of Defendant's statement: (1) the fourteen-hour delay between Jones' arrest and the interrogation; (2) Jones' isolation in a small, windowless room leading up to and during the interrogation; and (3) Jones' deprivation of food, drink, and sleep. (ECF No. 212 at 116:25–17:6; ECF No. 143 at 2.) In response, the Government argues that Defendant's fixation on the length of time prior to his interview is misleading, as the relevant inquiry is the length of time Defendant was actually interrogated. (ECF No. 150 at 8.)

The Court disagrees with the Government that the relevant inquiry is only the length of time the suspect was questioned. Rather, courts take into consideration the "length of detention" and the "repeated and prolonged nature of the questioning." *See, e.g.*, *Schneckloth*, 412 U.S. at 226. However, the Court finds that neither factor lends in favor of involuntariness here. It is undisputed that Defendant was questioned for about ninety minutes and detained for about thirteen and a half hours before the questioning began. (ECF No. 143 at 3–4; ECF No. 150 at 5–6.) The Court finds neither the length of questioning nor the length of detention to be out of the ordinary,

9

excessive, or persuasive in finding Defendant's statement involuntary when compared with other cases.[6] *See Sweet v. Tennis*, 386 F. App'x 342, 347 (3d Cir. 2010) (finding no coercion present where "entire questioning process . . . took only a few hours"); *see also Norcross v. Metzger*, 2020 WL 1532370, at *11, 14 (D. Del. Mar. 31, 2020) (considering detention of five hours and actual interrogation of three hours and ten minutes "not unusual" and holding that state court's determination that statement was voluntary was not unreasonable).

While the Defendant did not receive food or drink for the twelve hours that lapsed between his arrest and when he received two sandwiches and a drink at 6:20 A.M., the Defendant did not make any request for food or drink during this time or at a later point in time. Moreover, the Defendant laid on the floor in the interrogation room and appeared to be sleeping for close to seven hours of the twelve-hour timeframe from arrest to when he was given food and drink. Thus, the Court is not persuaded that his not receiving food or drink from the time of arrest until 6:20 A.M. caused Defendant's will to be "overborne." (Ex. 1 at 6:20.) Additionally, after being given food and drink, Defendant did not to eat the sandwiches until 1:41 P.M., more than three hours after the Detectives' interrogation of him had ceased. (Ex. 1 at 13:41.) Thus, there was not a deprivation of food or drink by law enforcement. The Defendant made a decision about whether and when he wanted to eat and/or drink what was provided to him. Defendant also did not indicate that he needed additional food or water during the questioning. With respect to Defendant's allegations that he was deprived of sleep, the Court observed in the video of the interrogation room where Defendant was held that, as noted above, he appeared to be sleeping from approximately 12:46

---

[6] As conceded by Defendant, the rebuttable presumption upheld in *Corley v. White* that confessions obtained after six unexcused hours of detention are inadmissible if the defendant has not been presented to a magistrate is inapplicable to state officers. 556 U.S. 303 (2009); (ECF No. 143 at 6; ECF No. 150 at 8.)

A.M. until 7:36 A.M., nearly seven hours. (ECF No. 212 at 156:21–25; Ex. 1 at 12:46–7:36.) The Court thus does not conclude from Defendant's arguments that he suffered from lack of sleep, food, and water. Factually, that is not the case. The Defendant slept and was given food and drink while in custody. Thus, the facts to do not support that the Defendant's will was overborne.

Defense counsel argues that police provoked Defendant during their ninety-minute interrogation of him by berating, taunting, and belittling him, as well as by wrongly suggesting that he could be exposed to the death penalty. (ECF No. 212 at 117:17–11; ECF No. 143 at 2.) "[A] confession is not rendered involuntary simply because the police procured it by using psychological tactics," nor is "the use of deception to procure a confession" dispositive as to whether or not it should be excluded from evidence. *Halsey v. Pfeiffer*, 750 F.3d 273, 304 (3d Cir. 2014); *Frazier v. Cupp*, 394 U.S. 731, 737–39 (1969) (rejecting defendant's claim that his confession was involuntary after he was falsely told his accomplice confessed). Moreover, the law "permits the police to pressure and cajole." *Id.* (quoting *United States v. Rutledge*, 900 F.2d 1127, 1131 (7th Cir. 1990)).

The Court does not agree with Defendant that Detective Bartol's "threat of the death penalty" was so coercive as to render Defendant's statement involuntary. Detective Bartol stated that "they don't do that anymore in Pennsylvania," when referencing the death penalty. (ECF No. 143 at 4; Ex. 1 at 9:37.) Moreover, the Detective's subsequent statement to Defendant that "technically under the law in Pennsylvania I believe you can still get the death penalty" was truthful. (ECF No. 143 at 4; Ex. 1 at 9:50.) First, the statement was not absolute, but qualified, as the Detective stated, "I believe you can still get the death penalty." He did not tell the Defendant you will get the death penalty. Additionally, capital punishment in Pennsylvania remains legal and while it has been subjected to a moratorium in the past, the law that permits capital punishment

has not been overturned.[7] The Court finds the statement by Detectives was not false or deceptive, and therefore, does not serve as a basis to suggest coercion that would support Defendant's argument that his statement was involuntary.

Finally, the Court finds that the Detectives' statements and remarks were not so threatening or coercive as to reasonably be expected to overcome Defendant's free will. Defendant displayed a calm demeanor throughout his interrogation despite Detectives' statements and offending comments and maintained his innocence. (*See generally* Ex. 1.) Moreover, the conduct that the Defendant states as the basis for this Motion did not yield a confession but quite the contrary. The Defendant denied any involvement in the robbery and murder and repeatedly stated his innocence. Thus, it evades reason to conclude that Defendant's insistence of his innocence in the face of the police's insults exhibit his will being overborne. Under the totality of the circumstances, the Court holds that Defendant's post-arrest statement to police was voluntary.

## V.     CONCLUSION

For the foregoing reasons, the Court denies Defendant's Motion. An appropriate Order follows.

BY THE COURT:

/s/ Hon. Kelley B. Hodge
_____
**HODGE, KELLEY B., J.**

---

[7] Governor Shapiro did not announce whether he would continue Governor Wolf's moratorium on the death penalty until February 16, 2023, approximately three weeks after Defendant's interrogation. Death Penalty Information Center, *Pennsylvania*, https://deathpenaltyinfo.org/state-and-federal-info/state-by-state/pennsylvania (last visited Sept. 15, 2025).